J. Stephen Peek, Esq. (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Adam G. Lang, Esq. (NV Bar #10117)
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000
Facsimile: (775) 786-6179

Reid H. Weingarten, Esq. (D.C. Bar #365893) (Admitted Pro Hac Vice June 15, 2007)
Brian M. Heberlig, Esq. (D.C. Bar #455381) (Admitted Pro Hac Vice June 15, 2007)
Robert A. Ayers, Esq. (D.C. Bar #488284) (Admitted Pro Hac Vice June 15, 2007)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
Telephone: (202) 429-3000
Attorneys for eTreppid Technologies, L.L.C. and Warren Trepp

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

ETREPPID TECHNOLOGIES, L.L.C., a Nevada Limited Liability Company

Plaintiff,

vs.

DENNIS MONTGOMERY, an individual; THE MONTGOMERY FAMILY TRUST; DENNIS MONTGOMERY and BRENDA MONTGOMERY as Trustees of The MONTGOMERY FAMILY TRUST; OPSPRING LLC, a Washington limited liability company, ATIGEO LLC; a Washington limited liability company, EDRA BLIXSETH, an individual; MICHAEL SANDOVAL, an individual, and DOES 1 through 20,

Defendants

AND ALL RELATED CASE(S)

Case No. 3:06-CV-00056-PMP-VPC
**Base File**

3:06-CV-00145-PMP-VPC

**ETREPPID TECHNOLOGIES, L.L.C.'S THIRD AMENDED COMPLAINT**

**ETREPPID TECHNOLOGIES, L.L.C.'S THIRD AMENDED COMPLAINT**

Plaintiff and Counter-Defendant eTreppid Technologies, L.L.C. ("eTreppid" or "Plaintiff") alleges as follows:

::ODMA\PCDOCS\HLRNODOCS\678467\6

**EXHIBIT 14**

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

## NATURE OF THE ACTION

1. Dennis Montgomery ("Montgomery"), the Montgomery Family Trust, Dennis and Brenda Montgomery, as trustees for the Montgomery Family Trust, Opspring LLC, Atigeo LLC (formerly named AziMyth LLC), Michael Sandoval, Edra Blixseth, and DOES 1-20 (collectively, "Defendants") have wrongfully misappropriated and/or converted trade secrets and other property, engaged and threatened to blackmail eTreppid by wrongfully converting and withholding eTreppid's sensitive proprietary information and other property, and/or have breached contractual agreements with eTreppid.

2. eTreppid is in the business of developing and marketing software for various applications. The software at issue in this matter is in the fields of digital compression products for applications including data compression, pattern recognition, object tracking and anomaly detection and other functions.

3. Software in general is written, modified, and edited by programmers in source code, or human readable computer language. The source code is then translated, or compiled, into object code, which is the machine readable series of instructions which comprise a particular executable program. The term "eTreppid Source Code," as used herein, refers to the source code which comprises eTreppid's digital compression products, including data compression, pattern recognition, object tracking and anomaly detection and other related functions.

4. Certain of eTreppid's employees, including Montgomery, were given access to eTreppid's sensitive proprietary information on specific terms and conditions designed to allow them to perform their duties while protecting eTreppid's proprietary information, including eTreppid technology, Source Code, confidential information, and trade secrets related to eTreppid products (collectively, the "eTreppid Confidential Information"). Prior to January 18, 2006, Defendant Montgomery was employed by eTreppid as its Chief Technology Officer, responsible for all of eTreppid's Source Code. As such, Montgomery had the ability to access eTreppid Confidential Information.

5. Montgomery had access to eTreppid Confidential Information, and in or around the period from December 2005 through January 2006, knowingly destroyed or deleted all versions of the eTreppid Source Code, including all back-up copies, which were located at the Company, and also

stole a complete and/or nearly complete current version of the eTreppid Source Code, for his own personal use and benefit. Montgomery also copied and then deleted from eTreppid's computers various electronically-stored documents and files, including eTreppid's email.

6. On information and belief, Montgomery claims to own some or all of the eTreppid Source Code and other eTreppid Confidential Information, through his association with and control of the Montgomery Family Trust.

7. Because Montgomery is wrongfully in possession of the only intact current version of the eTreppid Source Code, and Defendants are continuing to misappropriate and convert eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) to suit their own interests, eTreppid seeks the return of all eTreppid Confidential Information in Defendants' possession or control and seeks to enjoin them from obtaining any commercial advantage or unjust enrichment from their misappropriation. eTreppid also seeks damages for Defendants' wrongful conduct.

8. On information and belief, Montgomery has also knowingly violated a preliminary injunction order issued by a Nevada District Court in Case No. CV06-00114 by contacting potential investors, including, but not limited to, Opspring LLC, Atigeo LLC (formerly AziMyth LLC), Edra Blixseth, and Michael Sandoval, by sharing the eTreppid Source Code in an attempt to interfere with eTreppid's contractual relations and to use the source code for commercial gain, and by modifying the eTreppid Source Code. eTreppid is informed and believes that Opspring LLC, Atigeo LLC, Edra Blixseth, and Michael Sandoval have likewise conspired with Montgomery to violate the preliminary injunction order, interfere with eTreppid's contractual relations, and misappropriate eTreppid's proprietary technology. Indeed, eTreppid is informed and believes that Montgomery, Edra Blixseth, and Michael Sandoval even created Opspring LLC, for the specific purpose of misappropriating eTreppid's Source Code and using it for their own personal gains. eTreppid seeks damages against all Defendants for their wrongful conduct.

///

///

///

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**GENERAL FACTUAL ALLEGATIONS**

**The Parties**

9. eTreppid Technologies, L.L.C. (formerly known as "Intrepid Technologies, L.L.C.") is a privately-held limited liability company organized under the laws of the state of Nevada. Its corporate headquarters are located in Reno, Nevada.

10. eTreppid is informed and believes that, at the time the original complaint in this matter was filed, Dennis Montgomery resided in the State of Nevada. eTreppid is informed and believes that Dennis Montgomery currently resides in the State of California. Prior to January 18, 2006, Dennis Montgomery was employed by eTreppid as its Chief Technology Officer and was also a member of eTreppid's management committee.

11. Montgomery is currently a nominal member of eTreppid. However, Montgomery's used his membership interest in eTreppid to secure his obligations under a promissory note to a third party, Friendly Capital Partners. Montgomery has since defaulted on this promissory note, and his membership interest in eTreppid is therefore in dispute.

12. eTreppid is informed and believes that, at the time the original complaint in this matter was filed, Brenda Montgomery resided in the State of Nevada. eTreppid is informed and believes that Brenda Montgomery currently resides in the State of California.

13. eTreppid is informed and believes that, at the time the original complaint in this matter was filed, the Montgomery Family Trust was a Nevada Trust. eTreppid is informed and believes that the trust is currently domiciled in the State of California.

14. eTreppid is informed and believes that Defendant Edra Blixseth ("Blixseth") is a resident of the State of California.

15. eTreppid is informed and believes that Defendant Michael Sandoval ("Sandoval") is a resident of the State of Washington.

16. eTreppid is informed and believes that Defendant Atigeo LLC ("Atigeo"), formerly known as AziMyth LLC ("AziMyth") is a validly existing Washington limited liability company.

17. eTreppid is informed and believes that Opspring LLC ("Opspring") is a validly existing Washington limited liability company.

18. The Montgomery Family Trust transferred all of the then-existing and future rights to certain digital compression products that are incorporated in whole or in part in the eTreppid Source Code to eTreppid pursuant to the Contribution Agreement dated September 28, 1998. This initial software compression technology contributed by the Montgomery Family Trust, was improved and modified by eTreppid over the next eight years.

19. Under the terms of Montgomery's employment that existed from September 28, 1998 until January 1, 1999, set forth in the 1998 Intrepid Operating Agreement, Montgomery agreed to devote "substantially all of his time and attention and efforts to the Business and affairs of the LLC during reasonable business hours."

20. Under the terms of Montgomery's employment that existed from September 28, 1998 until January 1, 1999, set forth in the 1998 Intrepid Operating Agreement, Montgomery agreed not to compete with Intrepid by "(i) developing, licensing, or exploiting in any manner any software programs or other technology which is competitive with the Technology or Business of the LLC, ...or (ii) purchasing or otherwise acquiring, owning, holding, operating, managing, investing in or otherwise disposing of a like business of the LLC's Business and interests therein of any kind, or (iii) otherwise engaging in any or all aspects of a like business of the LLC's Business."

21. Under the terms of Montgomery's employment that existed from January 1, 1999 until November 1, 2001, set forth in the 1999 Intrepid Operating Agreement, Montgomery agreed to devote "substantially all of his time and attention and efforts to the Business and affairs of the LLC during reasonable business hours."

22. Under the terms of Montgomery's employment that existed from January 1, 1999 until November 1, 2001, set forth in the 1999 Intrepid Operating Agreement, Montgomery agreed not to compete with Intrepid by "(i) developing, licensing, or exploiting in any manner any software programs or other technology which is competitive with the Technology or Business of the LLC, ...or (ii) purchasing or otherwise acquiring, owning, holding, operating, managing, investing, in or otherwise disposing of a like business of the LLC's Business and interests therein of any kind, or (iii) otherwise engaging in any or all aspects of a like business of the LLC's Business.

///

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

23. Under the terms of Montgomery's employment that existed after November 1, 2001, set forth in the 2001 eTreppid Operating Agreement, Montgomery agreed to devote "substantially all of his time and attention and efforts to the Business and affairs of the LLC during reasonable business hours."

24. Under the terms of Montgomery's employment that existed after November 1, 2001, set forth in the 2001 eTreppid Operating Agreement, Montgomery agreed not to compete with eTreppid by "(i) developing, licensing, or exploiting in any manner any software programs or other technology which is competitive with the Technology or Business of the LLC, ...or (ii) purchasing or otherwise acquiring, owning, holding, operating, managing, investing in or otherwise disposing of a like business of the LLC's Business and interests therein of any kind, or (iii) otherwise engaging in any or all aspects of a like business of the LLC's Business."

25. eTreppid is unaware of the true names and capacities, whether individual, corporate or otherwise, of the defendants sued herein as DOES 1 through 20, and therefore sues these defendants by such fictitious names. eTreppid will amend this complaint to state the true names and capacities of such fictitiously named defendants when ascertained. eTreppid is informed and believes, and on that basis alleges, that each of such fictitiously named defendants was acting as the agent, partner, joint venturer or potential business partner or acquirer of eTreppid and is jointly and severally responsible for the acts and omissions alleged herein.

26. eTreppid is informed and believes and, on that basis, alleges that the Defendants and each of them were the agents, servants and employees of their co-defendants and each of them, and in doing the things alleged herein were acting within the course and scope of their authority as such agents, servants and employees and with the permission and consent of their co-defendants, and each of them.

**The Nature of eTreppid's Business**

27. eTreppid is in the business of developing and marketing software for various applications. The software at issue in this matter is in the fields of digital compression products for applications including data compression, pattern recognition, object tracking and anomaly detection and other functions. The eTreppid Source Code is the source code used to implement the various functions performed by eTreppid Software, including digital compression products such as data compression,

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

pattern recognition, object tracking and anomaly detection and other functions. eTreppid developed and owns the eTreppid Source Code, and all of eTreppid's revenues derive from eTreppid Software.

28. Given the critical importance of the eTreppid Source Code to eTreppid, as Chief Technical Officer Dennis Montgomery was solely responsible for maintaining a current version of the eTreppid Source Code and for backing-up (*i.e.*, saving a copy of) the eTreppid Source Code.

29. To protect the valuable eTreppid Source Code, eTreppid controls access to the eTreppid Source Code and other eTreppid Confidential Information to maintain its security and confidentiality. As discussed further below, these controls include limiting access to its facilities, to its computer servers, and to its tangible and intangible intellectual property.

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**<u>Security Measures Governing Access to eTreppid Source Code</u>**

30. The eTreppid Source Code, prior to its deletion, was stored in on-site computer servers, including the SRCSERVER and ISASERVER, and two computer workstations. Associated with each of these servers and workstations was a different RAID (Redundant Array of Independent Disks) storage box, which actually stored the eTreppid Source Code. Access to these servers was controlled by an Administrator password. Only Montgomery and one other eTreppid employee, Sloan Venables, knew the Administrator password in effect prior to and in or around the time period from December 2005 through January 2006.

31. The eTreppid servers were stored in a server room that is accessible by only a small group of personnel, which included Montgomery.

32. As of December 2005, the current version of the eTreppid Source Code was stored in the SRCSERVER. Backup copies were made of the eTreppid Source Code, portions of which were stored in multiple other locations, including a backup server referred to as ISASERVER, two (2) backup computer workstations, and backup servers located in the warehouse area of eTreppid's facilities. On information and belief, eTreppid alleges that Montgomery stole the backup servers that had been located in the warehouse area of eTreppid's facilities—which, on information and belief, contained a backup copy of some or all of the eTreppid Source Code.

33. For overall building security of eTreppid, at all times relevant hereto, only a few employees had an individual code to access the building and activate or de-activate the alarm system.

::ODMA\PCDOCS\HLRNODOCS\678467\6

Activation and de-activation of the alarm system at eTreppid's facilities was electronically monitored and the identity of the employees using the codes was recorded. Only Montgomery's code was used to access the building over the weekend of January 6, 2006.

34. Further, video cameras monitored the activities, including the access doors to the building and the server room, and the footage recorded from these cameras was stored on computers at eTreppid's facilities as video files. On or soon after January 10, 2006, Mr. Venables discovered that the video files which stored footage recorded from these cameras had been deleted from the computers.

35. Montgomery regularly provided compact discs, DVD's (digital versatile discs) and/or computer hard disks ("Backup Files") to eTreppid's Chairman, Mr. Warren Trepp ("Mr. Trepp"), which he represented to Mr. Trepp contained the most current version of the eTreppid Source Code. This representation was false; indeed, the files provided to Mr. Trepp contained no source code whatsoever.

**Misappropriation of Trade Secrets**

36. Historically, programmers developing eTreppid Source Code store pieces of the eTreppid Source Code they are working on at their workstations.

37. eTreppid maintained a network of computers that also allowed these programmers to access a portion of the eTreppid Source Code that was maintained on a shared directory. Montgomery was the only eTreppid employee who had access to the entirety of the eTreppid Source Code.

38. On or around December 19 or 20, 2005, Montgomery began deleting certain eTreppid Source Code files that were located on the hard drive for a certain workstation that had not been recently used. Montgomery told Mr. Barjinder Bal, an eTreppid employee, that he was deleting the files on Mr. Bal's workstation for security reasons, and that there remained copies of these files on the SRCSERVER that Mr. Bal would still be able to access. Also, at that time, the hard drive of Mr. Bal's workstation contained other eTreppid Source Code files, which Mr. Bal was using in the performance of his duties at eTreppid.

///

///

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

39. When Mr. Bal arrived at work on Monday, January 2, 2006, all of the eTreppid Source Code that he had been recently using and which had been on the hard drive of his computer workstation when he left work the previous Friday, December 30, 2005, had been deleted.

40. Another programmer/software developer, Mr. Venkata Kalluri, also discovered that the eTreppid Source Code files stored at his workstation had been deleted.

41. Mr. Kalluri asked Montgomery about the deleted eTreppid Source Code files, as he was concerned about the ability to continue to work without access to the files. Montgomery responded that he was performing a daily backup so that Mr. Kalluri would have the most recent files, and that he (Montgomery) would provide the eTreppid Source Code Mr. Kalluri required on an as-needed basis.

42. On December 21, 2005, Mr. Venables participated in a telephone conversation with Montgomery. In the conversation Montgomery suggested to Mr. Venables that he did not need to come to the office. Mr. Venables went to the office anyway. When he arrived he noticed that one of the computer workstations that were located in the warehouse and were used to store a backup copy of the eTreppid Source Code was missing. Mr. Venables asked Montgomery about the missing workstation, and Montgomery told Mr. Venables that he had taken the workstation and the associated RAID storage box to his home.

43. Mr. Venables took a vacation from December 22, 2005 to January 3, 2006.

44. During the time period between Christmas and New Year's Day, Montgomery provided Mr. Kalluri with specific files of the eTreppid Source Code upon demand. To provide the requested files, Montgomery copied the files to a shared drive that Mr. Kalluri could access. After Mr. Kalluri accessed the file and copied it to his workstation, the copy in the shared drive was deleted. When he completed his work on the files, Mr. Kalluri copied them back into the shared drive and informed Montgomery – who would then be responsible for copying that file to the servers that stored the eTreppid Source Code.

45. Upon returning from his vacation on January 3, 2006, Mr. Venables checked the status of the SRCSERVER and the ISASERVER. From this check, he determined that all of the eTreppid Source Code stored on each of these servers had been deleted. He was next informed by another

///

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

employee, Jesse Anderson, that portions of the eTreppid Source Code previously stored on the programmers' workstations had been deleted as well.

46. On January 3, 2006, Mr. Venables asked Montgomery what was going on, and Mr. Montgomery responded that he was "cleaning stuff up," and that this included deleted files that "weren't needed."

47. As of January 9, 2006, Mr. Trepp and Mr. Venables discovered that substantially all of the eTreppid Source Code was missing. None of the programmers had access to the pieces of the eTreppid Source Code they had been working on at their personal workstations. Mr. Venables looked for the eTreppid Source Code in the building, but could not find it. Mr. Trepp also directed employees to look for a complete copy of the eTreppid Source Code, to no avail. When Mr. Trepp later ordered an examination of the Backup Files provided to him by Montgomery, it was discovered that the Backup Files did not, and never had, contained any copy of the eTreppid Source Code for any period of time, contrary to Montgomery's representations. The Backup Files contained no useful data or source code at all, but were, on information and belief, merely a device used by Montgomery to deceive the company into believing there was a complete, updated copy of the eTreppid Source Code maintained off-premises.

48. On the morning of January 10, 2006, when Montgomery was in the building for a brief period of time, Mr. Venables asked Montgomery what happened to the eTreppid Source Code. Montgomery said it was stored on the seven hundred fifty three (753) separate "320 Gigabyte hard Drives" located in the building. Each of the hard drives that could be located were inspected by Mr. Venables and others, but none of the eTreppid Source Code was found.

49. Later on the day of January 10, 2006, Montgomery returned to the building and spoke with the Chairman, Mr. Warren Trepp. After they talked, Montgomery spoke with Mr. Venables, and stated that if Mr. Trepp wants to recover the missing eTreppid Source Code, he "needs to give me big money."

50. eTreppid is informed and believes and, on that basis, alleges that Montgomery has already transferred eTreppid's trade secrets and other intellectual property to third parties, including the Montgomery Family Trust and the Defendants named herein.

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**Computer Hard Drives Seized From Defendants' Residence and/or Storage Units**

51. On information and belief, on or around March 6, 2006, agents of the Federal Bureau of Investigation (the "FBI") conducted a search, pursuant to a search warrant, of Defendants' residence and of several storage units rented by Defendants. On information and belief, FBI agents seized certain computer hard drives during this search. FBI Special Agent Michael West ("Agent West") then contacted Warren Trepp and Sloan Venables at eTreppid, and provided three lists of serial numbers for twenty-seven computer hard drives (the "Hard Drive Lists") that, according to Agent West, the FBI seized from Montgomery and were in the FBI's possession. On information and belief, all of these twenty-seven computer hard drives, which were in the FBI's possession, have been returned to Mr. Montgomery.

52. On eTreppid's behalf, Messrs. Trepp and Venables reviewed the Hard Drive Lists and have located evidence that corroborates eTreppid's ownership of the hard drives by virtue of the serial numbers that appear on the Hard Drive Lists. eTreppid located purchase receipt evidence that corroborates its ownership rights to several of the twenty-seven computer hard drives identified on the Hard Drive Lists. In summary, at this time eTreppid has evidence relating to its ownership of several of the twenty-seven hard drives seized by the FBI from Montgomery's residence and/or storage units. eTreppid can further support its ownership of the hard drives and their contents if it is granted access to the twenty-seven hard drives, which eTreppid believes contain the stolen eTreppid Source Code, or some portion thereof, and can conduct an analysis to establish that contents of the stolen hard drives belong to eTreppid.

**eTreppid is Suffering Irreparable Harm Due to Mr. Montgomery's Misappropriation**

53. Without access to a complete copy of the eTreppid Source Code, the ability of eTreppid's programmers to perform their ordinary duties and to work on customer projects is limited. As a result, eTreppid is currently losing over $2,500.00 per day on wages and other administrative costs in order to retain key personnel, even though these personnel cannot regularly perform their ordinary duties because the eTreppid Source Code is missing.

54. eTreppid has also spent significant time and effort to secure additional contracts with customers it has done business with in the past. At present, eTreppid is unable to obtain contracts with

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

interested customers without the eTreppid Source Code. eTreppid was also precluded from doing business with certain of its prior customers because they had been brought into this litigation by Montgomery.

**Defendants Knowingly Violate the Preliminary Injunction Order by Conspiring to Misappropriate the eTreppid Source Code and Intentionally Interfering with eTreppid's Contractual Relations**

55. On January 19, 2006, eTreppid filed an Ex Parte Application for a Temporary Restraining Order and Motion for Preliminary Injunction against Dennis Montgomery requesting that pending trial, Montgomery be restrained and enjoined from using, transferring, disseminating, or destroying the source code at issue.

56. On February 8, 2006, the Court issued its Order Granting eTreppid's Motion for a Preliminary Injunction.

57. Pursuant to the Court's Order granting eTreppid's preliminary injunction, "Montgomery and all persons or entities in active concert or participation therewith, are enjoined and restrained from destroying, hypothecating, transferring, modifying and/or assigning the eTreppid Source Code, from discussing any eTreppid technology, including anomaly detection and pattern recognition software, with any third-party except experts and other persons and witnesses necessary to Defendant's case and counsel, provided, however that such witnesses and counsel shall not disclose any information to others about eTreppid Source Code."

58. eTreppid is informed and believes that after Montgomery's employment with eTreppid was terminated in January 2006, and after the entry of the foregoing Preliminary Injunction, that Montgomery discussed the eTreppid technology with a group of potential investors, including, but not limited to, Atigeo (who at the time was named AziMyth), Blixseth, and AziMyth's Chairman and CEO, Michael Sandoval, in clear violation of the Court's preliminary injunction order.

59. eTreppid is informed and believes that Montgomery, Blixseth, and Sandoval formed a separate entity, Opspring, for the specific purpose of further misappropriating the eTreppid Source Code and related technology by using them for their own financial gains and in clear violation of the preliminary injunction order, which is still in effect.

::ODMA\PCDOCS\HLRNODOCS\678467\6

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

60. Based upon information contained in certain sworn Declarations that Montgomery executed and filed in this case and in related proceedings, eTreppid is informed and believes that at some time in 2006, Montgomery (1) discussed the eTreppid technology and Source Code with certain third parties, including but not limited to Blixseth, Opspring, Atiego, and/or Sandoval, (2) licensed or otherwise transferred the eTreppid Source Code and/or related eTreppid trade secret technology to Blixseth, Opspring, Atiego, and/or Sandoval, and (3) modified the eTreppid Source Code.

61. eTreppid is informed and believes that from the time that Montgomery first began discussing the eTreppid technology and Source Code with Blixseth, Opspring, Atiego, and/or Sandoval, these individuals and entities were aware of the fact that the Court had entered the Preliminary Injunction referenced above, but nonetheless knowingly disregarded the requirements of the Preliminary Injunction.

62. eTreppid is informed and believes that Montgomery, Blixseth, Opspring, Atiego, and/or Sandoval are currently in possession of the eTreppid Source Code, as well as other eTreppid Confidential Information, and are currently engaged in efforts to develop and modify the eTreppid Source Code. eTreppid is further informed and believes that all defendants are engaging in an ongoing effort to market the eTreppid Source Code to third parties.

**FIRST CAUSE OF ACTION**
**(Misappropriation Of Trade Secrets – Nevada Revised Statutes §600A.010 *et seq.*)**
**(All Defendants)**

63. eTreppid re-alleges each and every allegation set forth in Paragraphs 1 through 62, inclusive, and incorporates them herein by reference.

64. The eTreppid Confidential Information is comprised of trade secret materials, including, but not limited to, eTreppid's Source Code for digital compression products, including compression, pattern recognition, object tracking, anomaly detection technology, film colorization and other applications. These trade secrets are not generally known to the public or to other persons who can obtain economic value from their disclosure or use. These trade secrets are the subject of reasonable efforts by eTreppid to maintain their secrecy, and they derive independent economic value from not being generally known. The information destroyed, deleted and/or taken by Montgomery constitutes eTreppid's "trade secrets" under Nevada Revised Statutes section 600A.030(5).

65. On information and belief, Defendants wrongfully, willfully and/or maliciously misappropriated eTreppid's trade secrets.

66. In particular, following the termination of his employment with eTreppid, Montgomery knowingly violated a court order by contacting AziMyth, Blixseth, and Sandoval and discussing eTreppid's proprietary technology with them. eTreppid is informed and believes that AziMyth, Blixseth, and Sandoval in turn agreed with Montgomery to use eTreppid's proprietary technology for their own benefit. Blixseth, Sandoval, and Montgomery even went so far as to form a separate entity, Opspring, specifically for the purpose of using eTreppid's technology for commercial gain. eTreppid is informed and believes that Opspring and the remaining Defendants are currently attempting to use eTreppid's proprietary technology for commercial gain in violation of the preliminary injunction order.

67. By reason of the above-alleged acts and conduct of Defendants, eTreppid has been damaged severely, and has and will continue to suffer great and irreparable harm and damage in the future. The precise amount of this irreparable harm is and will be difficult to ascertain, and eTreppid is without an adequate remedy at law to redress its injuries.

68. eTreppid is entitled to an injunction restraining Defendants, their employers, attorneys, agents, employees, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, selling or otherwise distributing eTreppid's trade secrets, or any product or services based on or incorporating all or part of eTreppid's trade secrets, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of eTreppid's trade secrets.

69. eTreppid is further entitled to an order requiring Defendants, their employers, attorneys, agents, employees, and all persons acting in concert with them, to return to eTreppid any and all of its trade secrets and confidential, proprietary materials, including, but not limited to, the eTreppid Source Code and other eTreppid Confidential Information, eTreppid hardware, and eTreppid storage media.

70. eTreppid is further entitled to recover from Defendants the actual damages sustained by eTreppid as a result of Defendants' wrongful acts. The amount of such damages cannot be determined precisely at this time.

///

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

71. Defendants' acts of misappropriation were knowing, willful and/or malicious, and eTreppid is entitled to an award of punitive damages and attorney's fees against Defendants. N.R.S. 600A.050-060. eTreppid is further entitled to recover from Defendants the gains, profits, advantages, and unjust enrichment that they have obtained as a result of their wrongful acts. N.R.S. 600A.050. eTreppid is at present unable to ascertain the full extent of these gains, profits, advantages and unjust enrichment but, on information and belief, avers that they are substantial and in excess of $10,000.00.

**SECOND CAUSE OF ACTION**
**(Breach of Contract)**
**(Dennis Montgomery)**

72. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 71, inclusive, and incorporates them herein by reference.

73. Montgomery breached the terms of his Contribution Agreement by which he assigned to eTreppid any and all of his rights to digital compression products in the eTreppid Source Code.

74. Montgomery breached the terms of his employment, as memorialized in the Company's operating agreements in effect during his employment with eTreppid.

75. As a direct and proximate result of Montgomery's breaches of these agreements, eTreppid has been damaged in an amount and entitled to recover a sum of money according to proof at the time of trial.

**THIRD CAUSE OF ACTION**
**(Conversion)**
**(All Defendants)**

76. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 75, inclusive, and incorporates them herein by reference.

77. eTreppid is informed and believes that Defendants have improperly taken and converted eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other property to their use. eTreppid is further informed and believes that Montgomery, Blixseth, Opspring, Atiego, and/or Sandoval are currently in possession of this information. The value of the eTreppid Confidential Information is, on information and belief, substantial and in excess of the jurisdictional minimum of this Court.

///

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

78. eTreppid is informed and believes that in committing the acts alleged herein, Defendants are guilty of oppression, fraud or malice in that Defendants wrongfully and unlawfully obtained eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other property in order to benefit themselves at eTreppid's expense. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against Defendants.

**FOURTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**
**(Dennis Montgomery)**

79. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 78 inclusive, and incorporates them herein by reference.

80. Montgomery owed a fiduciary duty to eTreppid, as an officer and a member of eTreppid's management committee.

81. The Montgomery Family Trust, Dennis Montgomery, and Brenda Montgomery, as trustees, owed a fiduciary duty to eTreppid as members of eTreppid.

82. Through the actions set forth above, the Montgomery Defendants have breached their fiduciary duty to eTreppid.

83. As a result of the Montgomery Defendants' breach of fiduciary duty, Plaintiff has suffered damages in an amount to be proven at trial but which exceed $10,000.00.

84. eTreppid is informed and believes that in committing the acts alleged herein, the Montgomery Defendants are guilty of oppression, fraud or malice in that the Montgomery Defendants wrongfully and unlawfully obtained eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other property in order to benefit themselves at eTreppid's expense. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against the Montgomery Defendants.

**FIFTH CAUSE OF ACTION**
**(Bad Faith – Tortious and Contractual)**
**(Dennis Montgomery)**

85. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 84, inclusive, and incorporates them herein by reference.

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

86. There exists in every contract entered into within the state of Nevada an implied covenant of good faith and fair dealing.

87. As an officer and manager of eTreppid, Dennis Montgomery owed eTreppid a fiduciary duty and therefore a special relationship, characterized by elements of fiduciary responsibility and trust, existed between Montgomery and eTreppid.

88. Through the actions described above, Montgomery breached the implied covenant of good faith and fair dealing.

89. As a result of Montgomery's breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial but which exceed $10,000.00.

90. eTreppid is informed and believes that in committing the acts alleged herein, Montgomery is guilty of oppression, fraud or malice. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against Montgomery.

**SIXTH CAUSE OF ACTION**
**(Declaratory Relief)**
**(All Defendants)**

91. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 90, inclusive, and incorporates them herein by reference.

92. An actual dispute exists between eTreppid, on the one hand, and Montgomery and the Montgomery Family Trust, on the other, regarding the ownership of the eTreppid Source Code.

93. Pursuant to N.R.S. 30.040, a judicial determination of the rights, duties and obligations of the parties under the eTreppid operating agreements and/or the state statutes and local ordinances is required with a determination and/or declaration that eTreppid holds all rights to any technology that Montgomery developed while he was an employee of eTreppid, and that eTreppid is entitled to possession of the eTreppid Source Code and the eTreppid Confidential Information.

**SEVENTH CAUSE OF ACTION**
**(Intentional Interference with Contract)**
**(All Defendants)**

94. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 93, inclusive, and incorporates them herein by reference.

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

95. Defendants were aware of certain contracts between eTreppid and a number of third parties, including but not limited to LLH & Associates, a prime governmental contractor.

96. Through the conduct set forth above, Defendants intended to interfere with and disrupt the contractual relationship between eTreppid and each and every third party with which eTreppid had a contract or with which eTreppid was competing for a contract.

97. Through the conduct as set forth above, Defendants have in fact disrupted the contractual relationship between eTreppid and each of these third parties by hampering eTreppid's ability to fulfill its contractual obligations.

98. As a result of Defendant's conduct, eTreppid has incurred damages in an amount to be determined at trial, but which exceeds $10,000.00.

99. eTreppid is informed and believes that in committing the acts alleged herein, Montgomery and Defendants, and each of them, are guilty of oppression, fraud or malice. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against Montgomery and Defendants, and each of them.

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**EIGHTH CAUSE OF ACTION**
**(Intentional Interference with Contract)**
**(Blixseth, Sandoval, Opspring, and Atiego)**

100. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 99, inclusive, and incorporates them herein by reference.

101. Blixseth, Sandoval, Opspring, and Atiego were aware of the contract between eTreppid and Montgomery.

102. Through the conduct set forth above, Blixseth, Sandoval, Opspring, and Atiego intended to interfere with and disrupt the contractual relationship between eTreppid and Montgomery.

103. Through the conduct as set forth above, Blixseth, Sandoval, Opspring, and Atiego have in fact disrupted the contractual relationship between eTreppid and Montgomery.

104. As a result of Defendant's conduct, eTreppid has incurred damages in an amount to be determined at trial, but which exceeds $10,000.00.

105. eTreppid is informed and believes that in committing the acts alleged herein, Blixseth, Sandoval, Opspring, and Atiego, and each of them, are guilty of oppression, fraud or malice. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against Blixseth, Sandoval, Opspring, and Atiego, and each of them

**NINTH CAUSE OF ACTION**
**(Claim and Delivery)**
**(All Defendants)**

106. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 105, inclusive, and incorporates them herein by reference.

107. eTreppid is the owner of certain computer hard drives and other electronic storage media and devices which may contain information that is eTreppid's intellectual property.

108. Montgomery wrongfully took some of the computer hard drives that are eTreppid's property and, on information and belief, copied eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) on to those hard drives and other of eTreppid's property, and wrongfully detained the hard drives and the eTreppid Confidential Information stored thereon.

109. eTreppid is informed and believes that Montgomery detained this property for the purpose of either converting it to his own use or demanding that eTreppid pay him a substantial amount of money for its return.

110. On information and belief, agents of the United States of America seized the hard drives and other of eTreppid's property pursuant to a search warrant. Pursuant to this Court's order of March 19, 2007, the hard drives and other seized property have been returned to Mr. Montgomery. eTreppid is informed and believes that Montgomery transferred possession of some or all of the eTreppid Source Code and other eTreppid Confidential Information to Blixseth, Sandoval, Opspring, and Atiego. The hard drives and the eTreppid Source Code belong to eTreppid, and should be immediately returned to eTreppid. All of the data that was stored on those hard drives also belongs to eTreppid and should also be immediately returned to eTreppid, including all copies of the data and the original data itself, and including data stored electronically, in hard copy, or in any other manner. Accordingly, eTreppid is entitled to a writ of possession.

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**TENTH CAUSE OF ACTION**
**(Civil Conspiracy)**
**(All Defendants)**

111. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 110, inclusive, and incorporates them herein by reference.

112. Defendants, acting in concert, intended to misappropriate eTreppid's technology for the purpose of harming eTreppid by unlawfully using eTreppid's Source Code for commercial gain.

113. Defendants, acting in concert, intended to interfere with eTreppid's contractual relations and prospective economic relationships, for the purpose of harming eTreppid by making it impossible for eTreppid to meet its contractual obligations or to fulfill its prospective economic relationships.

114. Defendants, acting in concert, intended to violate the preliminary injunction, which enjoined Montgomery from discussing eTreppid's technology with third parties or destroying, hypothecating, transferring, modifying and/or assigning the eTreppid Source Code by purposefully using eTreppid's source code for commercial gain.

115. eTreppid sustained damage resulting from Defendants' acts.

**ELEVENTH CAUSE OF ACTION**
**(Intentional Interference with Prospective Economic Relations)**
**(All Defendants)**

116. eTreppid re-alleges each and every allegation contained in paragraphs 1 through 115, inclusive, and incorporates them herein by reference.

117. eTreppid has or had a prospective contractual relationship with third parties with respect to the eTreppid technology and source code.

118. Defendants knew of eTreppid's prospective relationships.

119. Defendants intended to harm eTreppid by preventing eTreppid from entering into the prospective relationships.

120. Defendants had no privilege or justification for interfering with eTreppid's prospective relationships.

121. Defendants' conduct resulted in actual harm to eTreppid. As a result of Montgomery's Defendant's conduct, eTreppid has incurred damages in an amount to be determined at trial, but which exceeds $10,000.00.

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

122. eTreppid is informed and believes that in committing the acts alleged herein, Montgomery and Defendants, and each of them, are guilty of oppression, fraud or malice. eTreppid is therefore entitled to an award of punitive damages and attorney's fees against all Defendants, and each of them.

WHEREFORE, eTreppid requests judgment against Defendants, and each of them, and all those acting in concert with them as follows:

1. A permanent injunction restraining and enjoining Defendants from continuing the wrongful acts and conduct set forth above;

2. A permanent injunction requiring Defendants to return all eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other eTreppid property;

3. During the pendency of this action, a preliminary injunction enjoining and restraining Defendants from the wrongful acts and conduct set forth above and requiring Defendants to deliver to eTreppid a copy of all Confidential Information (including, but not limited to, email files and the eTreppid Source Code);

4. During the pendency of this action, a writ of possession requiring Defendants to return all eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other eTreppid property;

5. Restitution;

6. Declaratory relief providing that eTreppid holds all rights to any technology developed by Montgomery while he was an employee of eTreppid;

7. A writ of possession entitling eTreppid to take possession of all eTreppid Confidential Information (including, but not limited to, email files and the eTreppid Source Code) and other eTreppid property;

8. Compensatory damages in an amount to be proven at trial, including but not limited to damages recoverable pursuant to N.R.S. 600A.050.1;

9. Punitive damages pursuant to N.R.S. 600A.050.2;

10. Reasonable attorneys' fees;

11. All costs of suit herein incurred; and,

12. Such other and further relief as the Court may deem proper.

Dated: December 17, 2007.

/s/

J. Stephen Peek, Esq. (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Adam G. Lang, Esq. (NV Bar #10117)
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000
Facsimile: (775) 786-6179
*Attorneys for Plaintiff and Cross-Defendant eTreppid Technologies, L.L.C. and Cross-Defendant Warren Trepp*

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**PROOF OF SERVICE**

I, Meena Dalluge, declare:

I am employed in the **City of Reno, County of Washoe, State of Nevada,** by the law offices of Hale Lane Peek Dennison and Howard. My business address is: **5441 Kietzke Lane, Second Floor, Reno, Nevada 89511**. I am over the age of 18 years and not a party to this action.

On December 17, 2007, I caused the foregoing **ETREPPID TECHNOLOGIES, L.L.C.'S THIRD AMENDED COMPLAINT** to be:

X filed electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document to the following person(s) at the following e-mail addresses:

*Fax No. 775/829-1226*
mgunderson@gundersonlaw.com
Mark H. Gunderson, Ltd.
Mark H. Gunderson, Esq.
5345 Kietzke Lane, Suite 200
Reno, Nevada 89511

*Fax 310/500-3501*
Tpham@linerlaw.com; dklar@linerlaw.com; rlapine@linerlaw.com
Teri T. Pham, Esq.
Deborah A. Klar, Esq.
Ryan M. Lapine, Esq.
Liner Yankelevitz Sunshine & Regenstreif, LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

*Fax No. 202/616-8470*
Carlotta.wells@usdoj.gov
Carlotta P. Wells, Esq.
Senior Trial Counsel
Federal Programs Branch
Civil Division – Room 7150
U.S. Department of Justice
20 Massachusetts Ave., NW
P.O. Box 883
Washington, DC 20044

*Fax No. 784-5181*
Greg.addington@usdoj.gov
Greg Addington, Esq.
Assistant U.S. Attorney
100 W. Liberty Street, Suite 600
Reno, NV 89501

*Fax 202/616-8470*
Raphael.gomez@usdoj.gov
Raphael O. Gomez, Esq.
Senior Trial Counsel
Federal Programs Branch
Civil Division – Room 6144
U.S. Department of Justice
20 Massachusetts Ave., N.W.
P.O. Box 883
Washington, D.C. 20044

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on December 17, 2007.

/s/
Meena Dalluge

::ODMA\PCDOCS\HLRNODOCS\678467\6